MARY T. MILES et vir., Respondents, v. FANNIE DRUCKER. Appellant.

**Kansas City Court of Appeals, February 6, 1899.**

**Payment:** VENDOR AND VENDEE: LOSS BY FAILURE OF BANK. Where the vendee withholds part of the purchase money and leaves it with a bank to be paid to the mortgagee on the receipt of a release, and takes a receipt setting out such purpose, and the bank fails before the payment to the mortgagee, the loss, it would appear, should fall upon the vendee where the money has never become the property of the vendor; and the evidence in this case was reviewed and held to support a finding of the trial court in favor of the plaintiff.

*Appeal from the Pettis Circuit Court.*—HON. G. F. LONGAN, Judge.

AFFIRMED.

SANGREE & LAMM for appellant.

(1)    The $1,000 in dispute was paid precisely as the Miles people had contemplated to have it paid, and precisely as they agreed, at the very incident of payment, it should be appropriated.    In effect, it was appropriated on their order, request, acquiescence and procurement, and for their own purposes.    Such being the case, it was in legal effect a full payment by Miss Drucker of the whole purchase price, and the court below should have so held.    May v. Ins. Co., 72 Mo.

App. 286; Robinson v. Jarvis, 25 Mo. App. 421; Nolte v. Hulbert, 47 Ohio St. 445. (2) When the testimony is taken together and fairly construed, there is no proof to sustain the allegation in the answer of the Miles and Haley to the effect that Miss Drucker had contracted to pay $1,000 of the purchase money to the insurance company and assumed the sole risk of such money getting into its hands. On the other hand, all the proof shows that she was paying cash and in the way the Miles people directed and wanted it paid. Her only interest was in getting a clear title. (3) Thompson, whether acting in person or as cashier, was brought into the transaction by the Miles. He was held out to Frensdorf by them as the agent of the insurance company. He was in effect, also acting and held out as acting in a dual capacity as the agent or intermediary of the Miles. Under such circumstances his misfeasance, acts, delays, if any, resulting in any loss, must fall on the shoulders of the Miles, who brought him into the transaction and made it possible for him to do the wrong, and whose servant he was in their scheme for readjusting their affairs. Mechem on Agency, secs. 83, 84, and authorities cited. Thompson was the intermediary and agent of the Miles. It is so held in effect in Ins. Co. v. Miles, 81 Fed. Rep. 32.

CHARLES E. YEATER and BARNETT & BARNETT for respondents.

(1) The paper writing prepared by Miss Drucker's attorney, and signed by the bank through its cashier, is not a mere receipt, but a written contract showing the deposit of Miss Drucker's money, and the authority and direction to the bank to apply it to a specific purpose within a certain limited time, and as such is not susceptible of any parol explanation to vary it. Carpenter v. Jamison, 75 Mo. 285; s. c., 6 Mo. App. 216; Slattery v. Bates, 8 Mo. App. 595; State ex rel. v. Cummiskey, 34 Mo. App. 200. (2) The

money deposited was left by Miss Drucker with the bank, for application by the bank during the month of March to a specific end, and after that, from April 1, till the failure of the bank, was subject to her check on demand, and at no time was it subject to the control of Mrs. Miles in any manner nor did she have any right or interest in it, and such money was consequently the funds of Miss Drucker, and she is estopped from claiming otherwise, and can not vary the contract of deposit. Deuser v. Hamilton, 52 Mo. App. 394. (3) The testimony, taken together and fairly construed, shows that Miss Drucker, by previous agreement, held back and retained control of $1,000, and declined to depend on the warranty of the Miles deed, and declined to intrust it to the Miles, but having full confidence in the bank, intrusted it to the bank as the agent to apply it, as set forth in the written contract, and the loss must therefore of necessity be her loss. (4) The sum and substance of this transaction, on the testimony, is a simple sale by Miles to Drucker, with the agreement of the latter to assume a prior incumbrance of $1,000. (5) There is no evidence tending to show that Jas. C. Thompson was the agent of Mary T. Miles; neither is there any evidence tending to show that the First National bank was her agent.

ELLISON, J.—This action is based on a claim of $1,000 and interest alleged to be due plaintiff Mary T. Miles as a balance on sale of a piece of real estate in the city of Sedalia. Plaintiff asks to have a vendor's lien enforced. The decree below was in her favor and defendant appealed.

The facts necessary to state are as follows: It appears that plaintiff owned several lots on which there was a deed of trust to secure $3,000 to the Mutual Benefit Life Insurance Company, of New Jersey. That she agreed to sell a part of this property to defendant for $4,000. The payment to be made in cash upon delivery of conveyance with incumbrances satisfied. The parties, represented by agents, met on the fifteenth of March, 1894,

<div style="margin-left:2em">STATEMENT.</div>

to consummate the transaction in the First National Bank of Sedalia, J. C. Thompson being the cashier of the bank. Plaintiff was represented by her husband and defendant was represented by her attorney and by one Frensdorf. After an agreement of sale plaintiff desiring to get that portion of the property released from the mortgage to the insurance company had arranged with the company by correspondence through Thompson, that they would release the whole property on the payment of $1,000 cash and taking a new loan for the remaining $2,000 on that part of the property not sold to defendant. On the day the parties met in the bank the release had not yet arrived from the insurance company, and the parties desiring the sale to be consummated, the $1,000 (which, in reality, was being paid on the debt to the insurance company in order to obtain a release of that part of the property sold) was left with the bank to be paid to the insurance company when the release came. At this time all concerned had implicit confidence in the bank and its cashier. Shortly afterwards the bank failed and Thompson absconded without paying the money to the insurance company. The controversy is as to who was the owner of the money thus put in the bank and lost. If it had been paid to plaintiff by defendant and she left it to be applied to the release, it was her money and her loss. On the other hand, if, as is contended, she refused to pay the money to plaintiff until the release was obtained and herself left it with the bank, it was her loss. So the whole matter turns on a question of fact. The trial court determined the question in favor of plaintiff, and we have come to the same conclusion.

It appears that the whole affair was adjusted in the bank; that defendant's agent, Frensdorf, had the purchase money in one draft of $4,000, and that this was deposited in the bank to plaintiff's credit, she giving Thompson, as cashier, a check for $1,000 and he depositing it to the credit of the "cashier's account," making a memorandum opposite that it was for the

insurance company.  At the same time he executed the following receipt to defendant:

"Sedalia, Mo., March 15, 1894.

"Received of Miss Fannie Drucker one thousand dollars to be applied on deed of trust of the Mutual Benefit Life Insurance Company of Newark, N. J., as a release of lot three, and ten inches off of the east side of lot two, in block fifty-seven, Smith and Martin's second addition to Sedalia, Mo.  Said deed of trust to be released within the present month, and is recorded in book 53, page 444, recorder's office of Pettis county, Mo.

"(Signed) J. C. Thompson, Cashier."

The body of both the check and receipt were written by the defendant's attorney then present, as before stated.

It seems clear to us that this receipt, written and retained by defendant's attorney, shows that defendant was withholding the money from plaintiff and leaving it with Thompson, cashier, to be applied to the incumbrance held by the insurance company when the release was had.  The draft was for the whole purchase price of $4,000, which if all paid to plaintiff would leave defendant without indemnity as to the incumbrance.  So the understanding was come to, of turning the draft over to plaintiff's credit in the bank and she checking back to Thompson for the sum in dispute and he executing his receipt to defendant, as and for her money.  The fact that defendant's attorney did this is of consequence, for she was not present and he, with Frensdorf, adopted that means of consummating the deal.  He simply held back that amount of the purchase money to apply it to the release.  This view is further sustained by the statement in the testimony of the attorney, who said that when it was announced at the bank that the release had not arrived, Frensdorf, "wished to retain the $1,000 and not pay it over," when Thompson insisted that the $1,000 should be placed where he could apply it to the insurance company loan. This, alone, strongly indicated that the

PAYMENT: vendor and vendee: loss by failure of bank.

defendant's agent was not willing that plaintiff should have the money until the release was at hand. It indicates that when Thompson insisted on the money being left where he could apply it to the insurance company when the release came, Frensdorf acquiesced in that mode of holding the money from plaintiff, and the receipt to defendant, with a statement of what was to be done with the money, followed.

It is but fair to the attorney, Mr. Sangree, to say that he testified that his recollection of the receipt was that he wrote it after the money was transferred to the bank in the manner stated and the other parties had left, and that he wanted it as a matter of security to show where the money was and the purpose for which it was held. But however that may be, it seems to us that the face of the whole transaction shows the money was not paid to plaintiff, and when added to this, is the evidence in behalf of plaintiff, we find ourselves led to the same conclusion stated by the trial court.

We have not been unmindful of the argument advanced here against the conclusion of the trial court, and we do not say that the cause, on the evidence, is wholly free from doubt, but in such cases it has been the rule in this, and other appellate courts of the state, to defer to the finding of the chancellor.

As to the matter of costs referred to in the defendant's brief, we do not feel called upon to interfere with the discretion of the trial court.

The judgment is affirmed. All concur.